

_____
**ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| Luke Gulczynski, | * | Case No.    05-21435-RAG |
| Denise L. Gulczynski | * | Chapter    13 |
| | * | |
| | * | |
| Debtors | * | |

## MEMORANDUM OPINION AND ORDER SUSTAINING ORDER
## THAT DEBTORS' COUNSEL SHOW CAUSE

In this Chapter 13 case, Debtors' original Plan was confirmed by Order entered on March 8, 2006. The post-confirmation litigation from which this Memorandum Opinion and Order arises began with what appeared to be the presentation of a compelling legal puzzler: whether the Debtors' proposed sale of timber from real property of the estate triggers an unanticipated change in their financial circumstances such that the plan must be modified and the entire sale proceeds paid into the estate for the benefit of creditors. *See In re: Murphy, 474 F.2d 143 (4th Cir. 2007)*; *In re: Arnold, 869 F.2d 240 (4th Cir. 1989)*. However, the matter hastily evolved into a tangential ethical inquiry launched to examine the question of whether Debtor's Counsel, Wayne S. Goddard, has been

thoroughly honest with this tribunal as required by Maryland Lawyer's Rules of Professional Conduct (Rules of Professional Conduct), Rule 3.3(a)(1).[1]

On December 19, 2007, the Court entered an Order That Debtors' Counsel, Show Cause (Order to Show Cause, dkt. 80) for a potential violation of his duty of candor to the Court. The Order to Show Cause sets forth the relevant background of this matter and is hereby incorporated in this Order. To summarize, on March 9, 2007, the Debtors entered into a written agreement with a third party to cut and sell timber located on their real estate.[2] Although the timber was not cut at that time, Debtors apparently received a down payment at settlement and the remaining proceeds several months later totaling, $38,997. Counsel Goddard and the Debtors disagree on this point but either at the time they met with him on August 27, 2007, or before, the Debtors began spending the proceeds (which were patently property of the estate and not theirs to spend without the Court's permission) to fund their personal living expenses.[3] Debtors and Mr. Goddard agree that the remaining balance of the proceeds, $20,000, was eventually deposited into Mr. Goddard's escrow account.[4] However, Counsel thereafter neglected to reveal to the Court the Debtors' dissipation of the fund notwithstanding several intervening opportunities to

---

[1] Some of the issues relevant to this decision and Counsel's actions may, and probably will, be relevant to the Debtors still unresolved request for modification of their Plan. However, the resolution of those issues, and their interrelationship with the request for modification, should properly be reserved for decision at the time the modification request is heard.

[2] The real estate, and any timber thereon, became property of the estate upon the filing of the petition and remains estate property until either the confirmed plan is completed or the case is dismissed. *See* Order Confirming Plan (dkt. 290); 11 U.S.C. 1327(b).

[3] Debtors now claim that Mr. Goddard advised them that it would be acceptable for them to spend a portion of the money on personal living expenses. *See* Debtor's Amended Motion to Modify (dkt. 92) at para. 4. Mr. Goddard adamantly denies that he gave them such advice.

[4] That money has since been turned over to the Trustee for distribution to creditors.

do so and his post-dissipation written representations to the Court that cast the entire timber sale transaction as conditional, prospective and contingent. It is Counsel's failure on this level that implicates Rule 3.3(a)(1) of the Rules of Professional Conduct.

On December 31, 2007, Mr. Goddard filed his Response to Order to Show Cause (dkt. 82). He does not dispute the gravamen of the statement of events therein contained which recite why the Order to Show Cause was issued. Indeed, Counsel acknowledges that "the Motion to Sell did not specifically include an averment unequivocally stating that the Debtors had previously used a portion of the proceeds to address the shortfall between their monthly income and expenses". Response to Order to Show Cause at pg. 5.[5]

On January 16, 2008, the Court held a hearing on the Order to Show Cause and Counsel's Response, along with the continued hearing on the Chapter 13 Trustee's Motion to Modify Plan and the Debtor's Cross Motion to Modify Plan.[6] After argument as to modification issues, the Court noted its concerns regarding Counsel's actions and the corresponding apparent ethical violations, as memorialized in the Order to Show Cause. Counsel was given an opportunity to argue why, in conjunction with his Response to the Order to Show Cause, he should not be sanctioned.

---

[5] Debtor's Motion to Sell Timber to Fund Lump Sum Payment of Chapter 13 Plan (Motion to Sell) was filed on August 28, 2007, almost two months after their attorney, Emily K. Lashley, wrote the Trustee to inform him of the existence of the contract. *See* Exhibit I to Trustee's Motion to Modify (dkt. 42). Ms. Lashley is Mr. Goddard's associate.

[6] On January 9, 2008, subsequent to the issuance of the Order to Show Cause and Counsel's Response, new counsel, Marc R. Kivitz, entered his appearance on behalf of Debtors. Mr. Kivitz has filed amended Schedules I and J (dkt. 86), an amended Chapter 13 Plan (dkt. 91), a Revised Supplemental Motion to Modify Plan (dkt. 92), a second amended Schedule I (dkt. 94), and amended Schedules C, F, and H (dkt. 97). The hearing on the Revised Supplemental Motion to Modify Plan is scheduled for June 2, 2008.

In short, Counsel adamantly stated that (1) he did not advise the Debtors to commit either a fraud or a crime and therefore had no augmented duty of disclosure and (2) contrary to the Debtors' recent representation, he did not advise them to use the sale proceeds to fund personal expenses. To the contrary, Counsel asserted it was he who stopped them from dissipating the proceeds by having them place the remaining balance in his escrow account. However, in this Court's view Counsel's contentions beg the question. This is so because it is Counsel's fundamental duty of candor with the tribunal that has been drawn into question. And none of the arguments offered by Mr. Goddard at the hearing rebut the conclusion that he simply did not live up to that duty.

Following the hearing, the Court took the matter under advisement to conduct a review of the hearing transcripts and papers filed. For the reasons stated below, the Court will sustain the Order to Show Cause and refer this matter to the Disciplinary and Admissions Committee of the District Court.

In his Response to the Order to Show Cause, Counsel first argues that any lapse in judgment should be excused because he is not a bankruptcy specialist. Mr. Goddard notes that his firm, Cuomo & Goddard, LLP, does not concentrate in consumer bankruptcy, is no longer taking new bankruptcy cases, and only represented the Debtors in regards to the Motion to Sell that was the source of this debacle because it previously represented the Debtors in the plan confirmation process.[7] Counsel says that he initially believed that seeking to payoff the balance

---

[7] Mr. Goddard filed the Chapter 13 case for the Debtors on May 14, 2005. Debtors' Chapter 13 plan was confirmed on March 8, 2006. Mr. Goddard's associate, Emily K. Lashley, Esq., entered her appearance on behalf of the Debtors on April 4, 2007. Simultaneously, Mr. Goddard withdrew his appearance. Mr. Goddard re-entered his appearance on September 6, 2007.

due under the Chapter 13 plan via the sale of the timber would be "straightforward", and impliedly, therefore, would not require any special bankruptcy expertise. As further evidence of his asserted innocence, Mr. Goddard highlights that he did not enter his appearance in this matter until September 6, 2007 and then only to assist his associate, Ms. Lashley.[8]

While Counsel's asserted lack of bankruptcy expertise and his late entry into the postconfirmation dispute may be relevant on some level, neither of these contentions eliminate his duty to disclose the fact that the Debtors had already spent a substantial portion of the sale proceeds several months before the filing of the Motion to Sell. By his own admission he was aware of this fact at the time the Motion to Sell was filed, when he entered his appearance in early September 2007[9] and certainly at the time he was in front of the Court at the hearing on October 3, 2007. This obligation was most assuredly not bankruptcy-specific, but instead flowed from his general duty under the Maryland Lawyers' Rules of Professional Conduct to present

---

[8] It appears that Ms. Lashley handled issues, or at least signed the papers, regarding the sale of the timber initially. Following her entry of appearance, she filed Debtors' Motion to Continue Hearing on Trustee's Motion to Modify Plan (dkt. 45) on August 8, 2007, Debtors' Opposition to Trustee's Motion to Modify Plan and Cross Motion to Modify Plan (dkt. 46) also on August 8, 2007, Debtors' Modified Chapter 13 Plan (dkt. 50) on August 17, 2007, and Debtors' Motion to Sell Timber to Fund Lump Sum Payment of Chapter 13 Plan (dkt. 58) on August 28, 2007.

However, in contrast to the foregoing, Mr. Goddard has previously stated on the record that "in August of 2007, the Debtors met with us", which the Court assumes to mean both Counsel and Ms. Lashley jointly, to discuss the proceeds from the sale of the timber. Transcript ("T."), November 7, 2007 at pg. 8. Therefore, it appears that Mr. Goddard was providing advice to the Debtors on this transaction before he formally re-entered his appearance in the case. It was Mr. Goddard who appeared on behalf of the Debtors at the hearings held on October 3, 2007 and November 7, 2007.

[9] To try and rectify the ethical lapse, it would have been prudent for Counsel to file an amended Motion to Sell at that time.

matters in a truthful manner. This is particularly troubling because the Motion to Sell asserted that Debtor's right to receive the sale proceeds had not yet accrued (when in fact they had already received all of the money and spent a substantial portion) and that upon approval of the Motion to Sell, Debtors would be able to make a lump sum payment to the Trustee in the approximate amount of $27,432.52.  In fact, at that time Debtor's ability to make that payment in full had evaporated due to their dissipation of the proceeds. Thus, the Court is of the opinion that neither his alleged lack of bankruptcy skill nor his "late" entry into the dispute are sufficient to remove the cloud that hangs over Mr. Goddard's conduct.  They are simply immaterial to his responsibility to speak and write with candor when communicating with the Court.

Counsel next argues that Debtors' improper use of the sale proceeds was not material to the Court's consideration of the Motion to Sell.  The Court strenuously disagrees with this contention.  The motion is titled "Motion to Sell Timber *to Fund Lump Sum Payment of Chapter 13 Plan*" (emphasis supplied).  As indicated above, and as is made plain from the title, the precise relief sought was permission for the Debtors to fund the balance of their plan base, and receive a discharge of their remaining debt, through the payment to the Trustee of the sale proceeds.  And the payment of their remaining base was an act the Debtors simply could not have performed in reliance upon the alleged funding source at the time the Motion to Sell was filed.  Counsel rationalizes his conduct by asserting that:

> Conversely stated, the undersigned believed that if the Trustee and Court disapproved the sale of timber, believed the amount received for the timber was too low, or simply did not believe the sale was in the best interest of the Estate, the Debtors would have been required to return the funds to the party from whom the funds were received.  Hence, the asset/property represented by the disapproved contract to sell timber rights would be transferred into a post petition liability to the Debtors.

Response to Show Cause Order (dkt. 82) at para. 3.

In this Court's view, the foregoing statement is tantamount to an admission of unethical conduct. In essence, Counsel ignored the false veneer created by the Motion to Sell and allowed the process to unfold with clear knowledge that his clients could not perform as represented if the Motion was approved. Likewise, it is apparent that if the Motion was denied then Counsel had no intention of revealing his clients' dissipation of money that was unequivocably estate property. The statement seems to confirm an understanding on Counsel's part that he was not being candid with the Court, as he apparently relied upon the hope that the Debtor's dissipation of the money would remain secret whatever decision was reached on the Motion to Sell. Perhaps Counsel believed an alternative funding source would arise through a miracle of some sort, if the Motion to Sell was approved.

In any event, Counsel knew the Debtors retained only $20,000 of the sale proceeds at the time the Motion to Sell was filed, as the Debtors had already spent approximately $19,000.[10] Stated another way, Counsel knew that the Debtors did not have sufficient funds to retire the plan base, which is what the Motion to Sell ostensibly sought to achieve. Hence, the Debtors were unable to perform in accordance with the terms of their own Motion at the time it was filed. Thus, Debtors use of the sale proceeds was *highly* material to whether the Motion to Sell, as presented, should have been granted by the Court.[11]

---

[10] This amount includes the commission of approximately $4,000 paid to the broker.

[11] The fact that the Motion to Sell was ultimately approved does not alter the landscape with respect to Counsel's ethical conduct. Counsel's duty of candor was triggered at the latest when he entered his appearance on the Debtor's behalf. And that duty required him to honestly

The Court does not fault Counsel for convincing the Debtors to place the remaining funds in escrow so as to prevent further dissipation of the sale proceeds pending the outcome of the cross motions to modify. That was a prudent choice under the circumstances. However, Counsel's duty of candor absolutely required him to go further and apprise the Court and the Trustee of the actual status of the proposed sale.

Counsel finally argues that the Chapter 13 Trustee knew about the Debtors' use of the sale proceeds before the hearing on November 7, 2007. In that regard, it appears that on October 24, 2007, in the wake of an exchange of emails between Ms. Lashley and the Chapter 13 Trustee,[12] Mr. Goddard says he had a conversation with the Chapter 13 Trustee during which he explained that, "Debtors had used a portion of the proceeds to pay their monthly expenses because their contracting business was no longer in operation". Response to Order to Show Cause at pg. 4. Thus, Counsel argues that the Chapter 13 Trustee should not have been surprised when Counsel explained the same to the Court at the hearing on November 7, 2007.

This certainly belies the Chapter 13 Trustee's reaction at that hearing. In response to Counsel's disclosure at the hearing on November 7, 2007, the Chapter 13 Trustee responded "I'm a little bit puzzled because we had a hearing here a month ago and this information should have been known at that time, it was not revealed to us". T., November 7, 2007 at pg. 12.

---

reveal all facts relevant and material to the consideration of the Motion to Sell.

[12] The Court notes that in this email exchange on October 24, 2007, Ms. Lashley continues to assert that the purpose of the sale of the timber was to fund a lump sum payment of the Chapter 13 plan, despite the fact that the Debtors did not have sufficient funds remaining from the sale to payoff the plan.

-8-

Moreover, at the January 16, 2008 Show Cause hearing, the Chapter 13 Trustee emphatically denied Counsel's assertion that he disclosed the use of sale proceeds prior to the hearing on November 7, 2007. To the contrary, the Trustee stated on the record that "the best that Mr. Goddard might be able to say is that he advised me that the Debtors needed the money for their living expenses, but he certainly did not tell me that they had already spent the money". T., January 16, 2008 at pg. 31-32.  The Trustee then went on to further elucidate that Counsel may have "posed a hypothetical", stating something to the effect of "if the Debtors had spent the money, where would that leave us?".  Id. at 32-33.  The Trustee, however, said that he was not left with the impression that such action had already occurred and reiterated that he first learned that the Debtors had already spent some of the money at the hearing on November 7, 2007.

Without passing on the exact language used in the exchange on October 24, 2007, the Court is inclined to find that the Trustee's averments, while not under oath but made in his capacity as an officer of the Court, are credible.  The Court witnessed firsthand the Trustee's shock at the disclosure made by Counsel on the record at the hearing held on November 7, 2007. Additionally, as noted in the Order to Show Cause, none of the papers filed by the Debtors disclosed that the Debtors had spent a portion of the sale proceeds or even that the sale had already been consummated without authorization. To the contrary, all of the Debtor's filings consistently cast the sale as conditional and prospective.[13]  The Exhibits attached to the Response to the Show Cause Order (email correspondence dated October 24, 2007 between Ms. Lashley

---

[13] While Ms. Lashley's July 5, 2007 letter to the Trustee casts the sale as consummated, all subsequent papers filed with the Court describe it as prospective.  Neither her letter, nor anything else filed with the Court, state that the Debtors had already spent a portion of the proceeds.

-9-

and the Trustee) make no representation at all regarding Debtors use of the proceeds. At the hearing on January 16, 2008, the Court provided Mr. Goddard the opportunity to testify to clear up any misimpression and he declined. In any event, whatever Mr. Goddard may have said to the Trustee, the primary duty of candor is owed to the Court.

In conclusion, while some uncertainty may exist about the date on which actions were taken or statements were made, and perhaps about the exact wording of such statements, the sequence and substance of events in this matter is relatively clear. The Court continues to be of the mind that Counsel was not forthcoming about the Debtors' disposition of the sale proceeds, despite having an abundance of time and opportunities to set the record straight. As such, the Court can only conclude that Counsel concealed material facts from the Court and the Trustee, seemingly in an attempt to get away with something, either for the benefit of his clients or to cover up his own actions. Counsel seems to acknowledge only that he could have handled the matter better while still refusing to concede the specific ethical lapse.

In this respect, part of Counsel's problem is his misplaced focus upon Rules of Professional Conduct 3.3(a)(2) and 4.1(a)(2) and his insistence that he did not assist his clients in perpetrating either a fraudulent or criminal act.

The Rules of Professional Conduct are set forth at Maryland Rule 16-812 and are made applicable to this Court by Local Rule 704 of the United States District Court for the District of Maryland. Rule 3.3, Candor Toward the Tribunal, provides in relevant part:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

This Rule is the foundational principle of a lawyer's relationship with the court. While a lawyer is charged with, and should be commended for, aggressively representing his client, he may not lie to the court to further his client's or his own cause. Likewise, when a lawyer has made a statement that he later comes to find out is false, the lawyer *must* correct the prior statement, painful and difficult though it may be. Thus, Mr. Goddard's argument misses the relevant ethical principle, and the point, completely.

In this case, Counsel, at a minimum, waited until the 11th hour, at the hearing on the Motion to Sell on November 7, 2007, to apprise the Court and the Trustee that the Debtors could not consummate the Motion to Sell because they had already spent a substantial portion of the sale proceeds. Counsel was aware of this material fact for at least 2 months, and probably longer, yet did not attempt to supplement the Motion to Sell or correct the averments made at the hearing on October 3, 2007 to disclose that the Debtors had dissipated estate assets. As a result, the Court concludes that the record supports a finding that Counsel has breached his duty of candor to the tribunal.[14]

It is therefore, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Order to Show Cause is hereby **sustained**; and it is further

ORDERED, that this matter shall be referred to the Disciplinary and Admissions Committee for the United States District Court for the District of Maryland for further investigation and resolution in accordance with Local Rule 705 of the United States District

---

[14] The question of whether Mr. Goddard advised his clients to spend a portion of the proceeds remains unsettled. The Debtors claim that he did and he claims that he did not. However, none of these statements were made under oath and inferences may be drawn in either direction from the record. Hence, the Court makes no finding on that issue in light of the ultimate disposition decided upon.

Court for the District of Maryland.  Counsel is hereby ordered to cooperate with the Committee so that this matter may be resolved in a timely fashion, without any prejudice to the rights of Counsel to protect his interests as he sees fit.

cc:    Wayne S. Goddard, Esq.
Cuomo & Goddard, LLP
1018 Dulaney Valley Road
Towson, MD 21204

Luke Gulczynski, Debtor
Denise L. Gulczynski, Debtor
1906 Eden Mill Road
Pylesville, MD 21132

Gerard R. Vetter, Chapter 13 Trustee
7310 Ritchie Highway
Suite 715
Glen Burnie, MD 21061-3293

Mark A. Neal, Assistant United States Trustee
101 W. Lombard Street
Suite 2625
Baltimore, MD 21201

**End Of Order**